UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DENNIS LONNIE ALFRED WARD,

                      Plaintiff,

v.

G. GRIFFITHS, et al.,

                      Defendants.

_____/

Case No. 1:25-cv-844

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility in Kincheloe, Chippewa County, Michigan. The events

about which he complains occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan, the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan, and the Saginaw Correctional Facility (SRF) in Freeland, Saginaw County, Michigan. Plaintiff sues the following LCF staff in their individual and official capacities: Correctional Officer G. Griffiths and Warden Bryan Morrison. (Compl., ECF No. 1, PageID.1, 3.)

In Plaintiff's complaint, he alleges that on October 18, 2024, he "approached [Defendant] Griffiths and [non-party] Williams," and Plaintiff "made the comment that, 'I was going to start writing grievances on them for not doing their job.'"[1] (*Id.*, PageID.4 (phrasing in original retained).) In response, Defendant Griffiths asked Plaintiff if he was threatening Griffiths. (*Id.*) Plaintiff stated: "you can take it any way you wanted to." (*Id.* (phrasing in original retained).) Defendant Griffiths then ordered Plaintiff "to turn around and cuff up" and to give his identification card to Griffiths. (*Id.*) Plaintiff took his identification card "out and threw it on the floor and immediately turned around to be cuffed." (*Id.*) "As Plaintiff began to walk with the other officers that w[ere] there, [Defendant] Griffiths dug his fingers into Plaintiff's right arm and snatched him back into him." (*Id.* (phrasing in original retained).) Plaintiff told Defendant Griffiths "not to do that[] again," and then "Plaintiff was escorted to administrative segregation." (*Id.*)

Thereafter, Defendant Griffiths issued Plaintiff a class I misconduct ticket for "'assault and battery' and insolence." (*Id.*) In the misconduct report, Defendant Griffiths stated that "Plaintiff shrugged his right shoulder forward snapping his left arm forward straightening it out." (*Id.* (phrasing in original retained).) Plaintiff claims that "Defendant Griffiths knew these words and action would trigger Plaintiff to be placed in administrative segregation for the assault and battery."

---

[1] In this opinion, the Court corrects the capitalization in and removes the emphasis from quotations from Plaintiff's complaint.

(*Id.*) Plaintiff also claims that this misconduct charge for assault and battery was false. (*See id.*, PageID.6.)

On October 19, 2024, Plaintiff filed two grievances regarding the incident with Defendant Griffiths. (*Id.*, PageID.4.) Plaintiff claims that "these grievances were displaced by [non-party] segregation officers." (*Id.*) On October 23, 2024, a non-party hearing officer held a hearing for the two misconduct charges, and Plaintiff was found guilty of insolence and not guilty of assault and battery. (*Id.*) The non-party hearing officer "ordered" Plaintiff "to be released back into general population." (*Id.*) Plaintiff states that "later that evening," he was "still in administrative segregation." (*Id.*) On October 30, 2024, Plaintiff spoke with non-party Lieutenant Carter about Plaintiff's two previously filed grievances, both of which were missing. (*Id.*) The next day, Plaintiff re-submitted both grievances. (*Id.*)

Subsequently, on November 7, 2024, Plaintiff was transferred to SLF. Plaintiff states that upon arrival at SLF, a non-party prison counselor told the non-party correctional officers in Plaintiff's unit "that Plaintiff liked to assault staff." (*Id.*, PageID.5.) "Plaintiff informed them that he had not assault[ed] anyone and was found not guilty of this alleged assault." (*Id.*)

On November 18, 2024, Defendant Morrison, the warden at LCF, "placed the Plaintiff on modified grievance access status for 90 days for the grievances that he had written o[n] [Defendant] Griffiths." (*Id.*)

On November 26, 2024, Plaintiff was transferred to SRF. At SRF, Plaintiff was sent a guilty finding report for a misconduct charge that a non-party correctional officer had issued Plaintiff at SLF. (*Id.*) Plaintiff states that he did not receive a hearing for this misconduct charge. (*Id.*) Plaintiff believes "he has been treated unfairly because of the false statement that was made by [Defendant] Griffiths, claiming that Plaintiff had assaulted him." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the First Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution. (*Id.*, PageID.3.) Plaintiff also avers that Defendants violated his rights under state law. (*See id.*, PageID.6–7.) Additionally, the Court construes Plaintiff's complaint to raise a § 1983 civil conspiracy claim. (*See id.*, PageID.6 (alleging that Defendant Morrison "conspired" with Defendant Griffiths).) As relief, Plaintiff seeks a declaratory judgment and monetary damages. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

4

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.3.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). And, regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages, as well as declaratory relief. (Compl., ECF No. 1, PageID.6–7.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.").

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking prospective injunctive or declaratory relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Further, the United States Court of Appeals for the Sixth Circuit has held that transfer to another correctional facility typically moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). In the present action, Plaintiff's allegations against the named

Defendants relate solely to past harm, not future risk of harm. The 90-day modified grievance access period imposed by Defendant Morrison expired months before Plaintiff filed his complaint. And, Plaintiff is no longer confined at LCF, which is where he avers that the named Defendants are employed. Thus, Plaintiff's transfer moots his request for declaratory relief.

Accordingly, for the reasons set forth above, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief may be granted, and his official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.    Non-Parties Referenced in the Complaint

In Plaintiff's complaint, he describes the actions of several non-parties at SLF and SRF. (*See, e.g.*, Compl., ECF No. 1, PageID.5.)

Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against the non-party individuals or groups of individuals discussed in the complaint will be dismissed for failure to state a claim upon which relief may be granted.

C.    **Section 1983 Civil Conspiracy Claims**

The Court construes Plaintiff's complaint to raise a civil conspiracy claim under 42 U.S.C.

§ 1983. (Compl., ECF No. 1, PageID.6 (alleging that Defendant Morrison "conspired" with

Defendant Griffiths).)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure

another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of

a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive

the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy

caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory

allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing

that allegations of conspiracy must be supported by allegations of fact that support a "plausible

suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th

Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d

1534, 1538 (6th Cir. 1987).

Here, Plaintiff does not allege that any "agreement" or "plan" existed. (*See generally*

Compl., ECF No. 1.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory.

Plaintiff's subjective belief and personal interpretation of the events, without supporting facts, are

insufficient to show that Defendants engaged in a conspiracy. And, the fact that Defendants each

took allegedly adverse actions against Plaintiff does not on its own show that they engaged in a

civil conspiracy. As the United States Supreme Court has held, such allegations, while hinting at

a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest

that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has

recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege *facts* to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

### D.    Defendant Griffiths

#### 1.    First Amendment Retaliation Claims

Plaintiff claims that Defendant Griffiths retaliated against him as related to Griffiths pushing/shoving Plaintiff's person, Griffiths's issuance of the false assault and battery misconduct charge, and Plaintiff's transfer from LCF to SLF.[2] (*See* Compl., ECF No. 1, PageID.3, 4, 6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's

---

[2] As to the insolence misconduct ticket, Plaintiff does not allege that this charge was false. (*See* Compl., ECF No. 1, PageID.6 (alleging that Defendant Griffiths "filed a false 'misconduct report,' which alleged that the Plaintiff had assaulted him").) If Plaintiff had intended to raise a First Amendment retaliation claim against Defendant Griffiths regarding the issuance of the insolence misconduct ticket, such a claim would be dismissed for failure to state a claim because Plaintiff's own allegations show that he in fact engaged in insolent behavior by, at a minimum, throwing his identification on the ground, after Defendant Griffiths requested that Plaintiff give Griffiths the identification card. (*See id.*, PageID.4.) And, Plaintiff alleges no other facts to suggest that Defendant Griffiths acted with a retaliatory motive when issuing the insolence misconduct charge. (*See id.*) Under these circumstances, Plaintiff fails to show that Defendant Griffiths acted with a retaliatory motive when issuing this misconduct ticket.

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on October 18, 2024, he "approached [Defendant] Griffiths and [non-party] Williams," and Plaintiff "made the comment that, 'I was going to start writing grievances on them for not doing their job.'" (Compl., ECF No. 1, PageID.4 (phrasing in original retained).) In response, Defendant Griffiths asked Plaintiff if he was threatening Griffiths, and Plaintiff stated: "you can take it any way you wanted to." (*Id.*) Defendant Griffiths then ordered Plaintiff "to turn around and cuff up" and to give his identification card to Griffiths. (*Id.*) Plaintiff "threw [the identification card] on the floor and immediately turned around to be cuffed." (*Id.*) "As Plaintiff began to walk with the other officers that w[ere] there, [Defendant] Griffiths dug his fingers into Plaintiff's right arm and snatched him back into him." (*Id.* (phrasing in original retained).) Plaintiff told Defendant Griffiths "not to do that[] again," and then "Plaintiff was escorted to administrative segregation." (*Id.*) Thereafter, Defendant Griffiths issued Plaintiff an assault and battery misconduct charge, which Plaintiff alleges was false. (*Id.*) Plaintiff was ultimately found not guilty of the assault and battery charge. (*Id.*) On November 7, 2024, Plaintiff was transferred from LCF to SLF. (*Id.*, PageID.5.)

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff states that he told Defendant Griffiths and non-party Williams that he "was going to start writing grievances on them for not doing their job." (Compl., ECF No. 1, PageID.4.) Plaintiff does not provide any further explanation regarding how Defendant Griffiths and non-party Williams were "not doing their job." (*See id.*) Later, Plaintiff

alleges that after Defendant Griffiths shoved/pulled Plaintiff, Plaintiff told Defendant Griffiths "not to do that[] again." (*Id.*)

As to Plaintiff's two verbal statements, which are detailed above, Plaintiff's scant allegations regarding these two verbal statements make it difficult to determine whether these verbal statements were "non-frivolous" complaints such that they constituted protected conduct. Nonetheless, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, at this early stage of the proceedings, the Court assumes, without deciding, that Plaintiff engaged in protected conduct for purposes of his First Amendment claim. As to the second and third elements of a retaliation claim (i.e., adverse action and retaliatory motive), the Court addresses these elements below regarding (i) the pushing/shoving of Plaintiff's person, (ii) the issuance of the assault and battery misconduct charge, and (iii) Plaintiff's transfer from LCF to SLF.

### a.    Pushing/Shoving of Plaintiff's Person and Issuance of Assault and Battery Misconduct Charge

As to Defendant Griffiths pushing/shoving Plaintiff's person and Griffiths's issuance of the assault and battery misconduct charge after his interaction with Plaintiff on October 18, 2024, assuming, without deciding, that Plaintiff engaged in protected conduct, although Plaintiff has by no means proven his First Amendment retaliation claim against Defendant Griffiths, at this time, the Court will not dismiss Plaintiff's retaliation claim against Defendant Griffiths regarding the pushing/shoving of Plaintiff's person and the issuance of the assault and battery misconduct charge.

### b.    Transfer to SLF from LCF

Plaintiff alleges that on November 7, 2024, he was transferred from LCF to SLF. (Compl., ECF No. 1, PageID.5.) Plaintiff describes SLF as "a Level IV facility." (*Id.*)

As an initial matter, although Plaintiff claims in a conclusory manner that "he was transferred and placed in a higher facility level," Plaintiff alleges no facts about his specific security level at LCF prior to his transfer, so the *facts* alleged do not support Plaintiff's assertion that he was "placed in a higher facility level." (*See id.*) Moreover, transfers to the general population of another prison or between general population units at one prison typically are not an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, in *Hill v. Lappin*, the Sixth Circuit held that transfer from general population to administrative segregation or another prison's lock-down unit can be sufficient to constitute adverse action. *Hill*, 630 F.3d at 474–75. Here, Plaintiff claims that he was "placed in a higher facility level" at SLF, which he describes as a level IV facility, but he alleges no facts to suggest that he was placed in administrative segregation there. Indeed, the facts alleged by Plaintiff suggest that at some point prior to his transfer, he had been in administrative segregation at LCF, not that he was placed in administrative segregation at SLF. Therefore, the facts alleged by Plaintiff suggest that he had been in administrative segregation prior to his transfer, but that upon his transfer to SLF, he was no longer in administrative segregation.

And, regardless, even assuming, without deciding, that Plaintiff's transfer to SLF constituted adverse action, at most, Plaintiff's allegations suggest only temporal proximity between Plaintiff's transfer and Plaintiff's protected conduct. However, although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)) *and Briggs*

*v. Westcomb*, 801 F. App'x 956 (6th Cir. 2020) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive).

Instead, Plaintiff's allegations of retaliation regarding his transfer to SLF are entirely conclusory, and Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Plaintiff's "conclusory allegations of retaliatory motive," which are "unsupported by material facts," do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Therefore, any First Amendment retaliation claim premised on Plaintiff's transfer to SLF will be dismissed for failure to state a claim.

### 2.    Eighth Amendment Claims

Plaintiff alleges that Defendant Griffiths used excessive force against him on October 18, 2024, when Griffiths "dug his fingers into Plaintiff's right arm and snatched him back into him" when Plaintiff was being transported to segregation. (*See* Compl., ECF No. 1, PageID.4 (phrasing in original retained).)

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton

infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause

14

harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff alleges that Griffiths "dug his fingers into Plaintiff's right arm and snatched him back into him" when Plaintiff was being transported to segregation on October 18, 2024. (*See* Compl., ECF No. 1, PageID.4 (phrasing in original retained).) Although not dispositive, Plaintiff does not allege that he sustained any injury.

As noted above, "[t]he objective component requires the pain inflicted to be 'sufficiently serious,'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and not every shove or restraint gives rise to a constitutional violation. *Parrish*, 800 F.2d at 604. Here, Plaintiff's allegations suggest that as he was being transported to segregation, Defendant Griffiths shoved or pulled him (i.e., "snatched him back into him") and when taking this action, Griffiths's fingers "dug" into "Plaintiff's right arm." (Compl., ECF No. 1, PageID.4.) Plaintiff alleges no other facts about this interaction with Defendant Griffiths. Without additional supporting facts, under the circumstances alleged by Plaintiff, the Court concludes that Plaintiff has failed to show that this shove or push satisfies the objective component of the relevant two-prong test. *See, e.g.*, *Wilkins*, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." (citations omitted)).

Accordingly, Plaintiff's Eighth Amendment excessive force claim against Defendant Griffiths will be dismissed for failure to state a claim.

### 3.    Fourteenth Amendment Due Process Claims

Plaintiff states that he is bringing Fourteenth Amendment claims against Defendant Griffiths, and the Court construes Plaintiff's complaint to raise procedural due process claims against Griffiths regarding the issuance of the assault and battery and insolence misconduct charges. (Compl., ECF No. 1, PageID.4.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that Defendant Griffiths issued him an assault and battery misconduct ticket, as well as an insolence misconduct ticket, around October 18, 2024. (Compl., ECF No. 1,

PageID.4.) Plaintiff states that he was found not guilty of the assault and battery charge and found guilty of insolence. (*Id.*) Plaintiff does not indicate what sanctions, if any, he received as a result of the insolence misconduct conviction. Plaintiff suggests that he returned to administrative segregation following the hearing on both misconduct charges, but states that the hearing officer had ordered that Plaintiff be released to general population. (*Id.*)

As to the insolence misconduct conviction, because Plaintiff does not indicate what sanctions, if any, he received as a result of the misconduct conviction, Plaintiff necessarily fails to show that any sanction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Further, as to Plaintiff's placement in administrative segregation, Plaintiff's allegations suggest that he was in administrative segregation at LCF for less than one month. (*See* Compl.,

ECF No. 1, PageID.4.) In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant).

Finally, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges; it does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, for all of the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendant Griffiths.

**E.    Defendant Morrison**

**1.    Claims Regarding Plaintiff's Placement on Modified Grievance Access**

Plaintiff alleges that Defendant Morrison violated his First and Fourteenth Amendment rights by placing him on modified grievance access.[3] (*See* Compl., ECF No. 1, PageID.3, 5.)

As an initial matter, courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any alleged interference with the grievance process did not deprive Plaintiff of due process.

Furthermore, Plaintiff's placement on modified access did not violate his rights under the First Amendment. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to

---

[3] Placement on modified grievance access does not prohibit an inmate from utilizing the grievance process. *See Walker*, 128 F. App'x at 445–47; *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ SS (eff. Oct. 21, 2024).

address government; the government may refuse to listen or respond). Defendant Morrison's actions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Finally, to the extent that Plaintiff intended to raise a First Amendment retaliation claim against Defendant Morrison regarding Plaintiff's placement on modified grievance access, Plaintiff fails to state such a claim because the Sixth Circuit has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker*, 128 F. App'x at 446; *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001). And, regardless, Plaintiff's allegations of retaliatory action by Defendant Morrison are entirely conclusory. Plaintiff merely alleges the ultimate fact of retaliation

without providing supporting factual allegations. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey*, 420 F.3d at 580 (citation omitted);

Accordingly, for all of the reasons set forth above, all of Plaintiff's claims against Defendant Morrison regarding Plaintiff's placement on modified grievance access will be dismissed for failure to state a claim.

### 2.    Claims Based on Defendant Morrison's Supervisory Position

Plaintiff alleges that Defendant Morrison "is responsible for . . . the correctional officers[] that are under his supervision" and for "the care of the prisoners as well." (Compl., ECF No. 1, PageID.5.) Based on this allegation, it appears that Plaintiff is attempting to hold Defendant Morrison liable for the actions of his subordinates. However, government officials, such as Defendant Morrison, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993). Here, the factual allegations set forth above are insufficient to show that Defendant Morrison encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in the conduct.

Therefore, Plaintiff's claims against Defendant Morrison that are based on his supervisory position will be dismissed for failure to state a claim.

### F.    State Law Claims

Finally, Plaintiff alleges that Defendants Griffiths and Morrison violated his rights under state law. (*See, e.g.*, Compl., ECF No. 1, PageID.6–7.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendant Morrison will be

dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Morrison. Because Plaintiff continues to have pending federal claims against Defendant Griffiths, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Griffiths.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendant Morrison will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendant Morrison will be dismissed without prejudice. The Court will also dismiss, for failure to state a claim, any intended claims against the non-party individuals or groups of individuals discussed in the complaint and the following claims against remaining Defendant Griffiths: official capacity claims, First Amendment retaliation claims premised on the issuance of the insolence misconduct ticket and Plaintiff's transfer to SLF, Eighth Amendment claims, and Fourteenth Amendment due process claims. Plaintiff's First Amendment retaliation claim against Defendant Griffiths in Griffiths's individual capacity premised on the pushing/shoving of Plaintiff's person and the issuance of the assault and battery misconduct charge, as well as Plaintiff's state law claims against Defendant Griffiths, remain in the case.

An order consistent with this opinion will be entered.

Dated: _____October 1, 2025_____            _/s/ Jane M. Beckering_____
                                          Jane M. Beckering
                                          United States District Judge